IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| MARISA D.,[1] <br><br>            Plaintiff, <br><br>    v. <br><br> COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, <br><br>            Defendant. | Case No. 6:21-cv-1335-HL <br><br> **OPINION AND ORDER** |

HALLMAN, United States Magistrate Judge:

Plaintiff Marisa D. brings this action under the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Act. 42 U.S.C. § 401 *et seq.* For the following reasons, the decision of the Commissioner is AFFIRMED.

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name for non-governmental parties and their immediate family members.

**STANDARD OF REVIEW**

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted)

**BACKGROUND**

**I.      Plaintiff's Application**

Plaintiff alleges disability based on stage 3 kidney disease, COPD – lung scarring, suppressed immune system – auto immune, blood clots/deep vein thrombosis, hypothyroid,

migraines, hand and leg cramps, vasenlitis, and Wegener's Disease. Tr. 175.[2] At the time of her initially alleged onset date, she was 46 years old. Tr. 58. She has a high school diploma and past relevant work experience as a coffee manager. Tr. 23, 58.

Plaintiff protectively applied for DIB on June 19, 2019, alleging an onset date of July 1, 2008. Tr. 69. Her application was denied initially on October 24, 2019, and on reconsideration on March 9, 2020. Tr. 66, 77. Plaintiff subsequently requested a hearing, which was held on January 29, 2021, before Administrative Law Judge ("ALJ") John Sullivan. Tr. 33. Plaintiff appeared and testified at the hearing, represented by counsel; vocational expert ("VE") Terry J. Whiting-Turner also testified. Tr. 35. On February 19, 2021, the ALJ issued a decision denying plaintiff's claim. Tr. 24 – 25. Plaintiff requested Appeals Council review, which was denied on July 15, 2021. Tr. 1 – 3. Plaintiff then sought review before this Court.[3]

## II.   Sequential Disability Process

The initial burden of proof rests on the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful

---

[2] Citations to "Tr." are to the Administrative Record. (ECF 8).
[3] The parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636. (ECF 26).

activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141. At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c).

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§

404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

### III.   The ALJ's Decision

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity from her amended alleged onset date, December 27, 2013, through her date last insured, which was December 31, 2013 ("DLI"). Tr. 18.

At step two, the ALJ determined that plaintiff has the following severe impairments: immune deficiency disorder, chronic kidney disease, obesity, and vasculitis/Glomerulonephritis. Tr. 18.

At step three, the ALJ determined that plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 19. The ALJ then resolved that, through the DLI, plaintiff had the residual functional capacity ("RFC") to perform the full range of light work with no limitations. Tr. 20.

At step four, the ALJ found that, through the DLI, the claimant has, and can still perform, past relevant work as a coffee manager. Tr. 23.

At step five—considering plaintiff's age, education, work experience, and RFC—the ALJ found that plaintiff could perform her past relevant work as a coffee manager and that a significant number of other jobs existed in the national economy that plaintiff could perform. Tr. 23. Thus, the ALJ concluded that plaintiff is not disabled. Tr. 24.

## DISCUSSION

Plaintiff argues that the ALJ committed the following errors: failing to provide specific, clear and convincing reasons to reject plaintiff's subjective symptom testimony, and failing to

adequately develop the record. For the reasons discussed below, the Commissioner's decision denying plaintiff's claim is affirmed.

I.     **Subjective Symptom Testimony**

Plaintiff argues the ALJ failed to identify specific, clear and convincing reasons supported by substantial evidence in the record to discount plaintiff's subjective symptom testimony. Plaintiff clarifies that there was legal error because: 1) the ALJ relied solely on a lack of supporting medical records in discrediting plaintiff's testimony regarding the severity of her symptoms; and 2) the ALJ failed to take into account plaintiff's testimony regarding her general fatigue. Each of these issues is addressed below.

   A.     **Legal Standards**

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of their symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan*, 246 F.3d

at 1208. In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).  The question is not whether the ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

### B. Plaintiff's Testimony

With respect to her physical conditions, when asked about any symptoms leading up to her kidney biopsy at the relevant time period, plaintiff testified she was "tired all the time" after a hernia repair in 2008, to pain and swelling in her eyes, migraines, swelling in her legs and feet, and generally not feeling good. Tr. 41, 43. Plaintiff then testified to symptoms she experienced after beginning chemotherapy, including being sick and nauseous, and extreme lack of energy. Tr. 44. She then testified to symptoms experienced while on Imuran, including cramping in her feet, legs, and hands, upset stomach, shortness of breath, struggles walking, being physically down for days at a time, leg swelling, a consistent pain in her right side, headaches, blood clots, and not being able to stand for more than an hour. Tr. 44–46. When asked by the ALJ, "[a]ll of those symptoms that you've just described, have you had all of those same symptoms since the time you were diagnosed with acute kidney failure at the end of December 2013?" plaintiff testified, "[y]es." Tr. 46.

When questioned by her attorney specifically about the alleged onset date, December 27, 2013, to the DLI, December 31, 2013, plaintiff opined she "was not doing well at all," and there were days she "was ready to give up because I just, I wasn't feeling good at all." Tr. 50. She further testified that during chemotherapy, it "kept me down for a good, a good while," and she was not able to do much, including "any of my normal routine." Tr. 50–51.

After summarizing plaintiff's hearing testimony, the ALJ determined that her medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 21. In discounting the testimony, the ALJ found that much of the testimony concerning the severity of her symptoms is after the DLI, and that plaintiff's testimony conflicts with her medical records from the relevant time period in December of 2013. Tr. 21.

### 1.   Symptom Severity

The ALJ discounted plaintiff's testimony regarding the severity of her symptoms because most of what she testified to came after her DLI of December 31, 2013.

When plaintiff was asked about her symptoms leading up to her DLI of December 31, 2013, plaintiff explicitly testified only to pain and swelling in her eyes, migraines, low energy, swelling in her legs and feet, and generally not feeling good. Tr. 41–43. She also testified, following a hernia repair in 2008, she was "tired all the time." Tr. 41. After her DLI, when plaintiff got the results of her kidney biopsy and began chemotherapy in January 2014, plaintiff testified to being sick and nauseous, the eye pain, and laying on the couch for most of the hours of the day due to the chemotherapy. Tr. 44. The chemotherapy also "kept me down for a good, a

good while," and she did not engage in "any of my normal routine. I didn't clean house, I didn't go grocery shopping, and I didn't do anything I normally did." Tr. 50–51.

Sometime later she switched to an oral chemotherapy medication which made her feel much the same. Tr. 44. She then started taking Imuran, and complained of upset stomach, cramping in hands, feet, and legs, difficulty walking, shortness of breath, days where she feels she can conquer the world and then being down for three days because she lacks energy to do anything, swelling in her legs, a consistent pain in her right side, headaches, blood clots, and difficulty standing for more than an hour at a time. Tr. 44–46.

Throughout plaintiff's testimony, she clearly remembered and related her symptoms back to when she started certain treatments. As outlined above, she even gave clear testimony as to symptoms being experienced leading up to her diagnosis, after the alleged onset date, and beyond the DLI.

After summarizing plaintiff's hearing testimony, the ALJ provided a timeline of treatments and doctor's notes stretching from the hernia repair in 2008, to the alleged onset date of December 27, 2013, when the biopsy was taken, to June 2014, and concluded that "the worsening symptoms and increasing medical care documented in the record and described by the claimant in her testimony fall after her DLI and does not establish disability in the required time frame." Tr. 22.

Here, the ALJ's reasoning for discounting plaintiff's testimony is based on the inconsistencies in the timeline of when she experienced symptoms, the notably "routine" medical records leading up to her alleged onset date, and the medical records between her alleged onset date and the DLI. Tr. 21-22. Therefore, the ALJ's reasoning is supported by substantial evidence.

    2.    **Contradictory Medical Evidence**

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). While an ALJ may also consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain," *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001), they cannot reject subjective pain testimony solely on that basis. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see also* 20 C.F.R. § 404.1529(c)(2) (the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

Plaintiff argues the ALJ discounted plaintiff's subjective symptom testimony based solely on a lack of supporting medical evidence in the record, while defendant cites conflicting objective medical evidence as a specific reason the ALJ gave for discounting plaintiff's subjective symptom testimony. Def's. Resp. Br. 4.

The parties disagree as to whether the ALJ cited specific, clear and convincing reasons in the objective medical evidence for rejecting plaintiff's subjective symptom testimony. Plaintiff contends that the ALJ did not take into account complaints of generalized fatigue and malaise. Pl's. Br. 9, 11. Defendant argues that even without the mention of this one medical issue, the ALJ's determination is still reasonable and should be upheld. Def's. Resp. Br. 6.

While this Court agrees that the ALJ incorrectly states "[t]here was no mention made of the … general malaise/fatigue the claimant described *at the hearing*," the other evidence in the record still supports the ALJ's decision. Tr. 22 (emphasis added).

Here, the ALJ concluded that plaintiff's testimony on her physical symptoms was "inconsistent with her contemporaneous complaints documented by treatment providers at the time." Tr. 21. Notably, before her alleged onset date of December 27, 2013, plaintiff had a "fairly routine medical history." Tr. 21. Leading up to the alleged onset date, plaintiff had a hernia repair in 2008, a mild soft tissue or bone contusion to her right knee in 2011, and chest pain with two normal presenting EKGs in 2012. Tr. 290-93; 334; 302-04. From December 11, 2013, to her alleged onset date, plaintiff's complaints and diagnoses at the time were of puffy, swollen eyes, pain around the eyes, a sharp pain in her eye, hypothyroidism, joint pain in her knee, and dacryoadenitis. Tr. 330-32. On her alleged onset date of December 27, 2013, plaintiff was diagnosed with acute renal failure, and a kidney biopsy was performed. Tr. 505. After her DLI, on January 08, 2014, plaintiff's active problems were chronic dacryoadenitis, chronic kidney disease stage 2, hypothyroidism, joint pain in the knee, and pain in or around eye. Tr. 323. There was no mention of plaintiff beginning chemotherapy on or before her DLI, with the earliest mention of it being a part of her treatment on January 09, 2014. Tr. 1285.

Based on the record before the Court, the ALJ's discounting of plaintiff's subjective symptom testimony based on contradictory medical evidence is clear and convincing, and supported by substantial evidence. An ALJ need not use the magic words, "I reject [this evidence] because…" in order to discount evidence. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). A reviewing court is not "deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Id*. The ALJ's citation to these objective findings is "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d at 958 (9th Cir. 2002). This objective evidence is

therefore a clear and convincing reason, supported by substantial evidence, for discounting plaintiff's subjective symptom testimony.

## II. The Record

Plaintiff asserts this case should be remanded so the ALJ may further develop the record. This argument is predicated on the ALJ's following statement, "What these pieces of evidence suggest is that the severity and persistence of claimant's symptoms (as described in her testimony) may not have existed at the level of severity alleged at or before her DLI." Pl's. Br. 13. Plaintiff believes this statement alone, without anything further, asserts that the record is inadequate and ambiguities exist. However, this Court disagrees. An ALJ's duty to further develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). The record before the ALJ was neither ambiguous nor inadequate to allow for a proper evaluation of the evidence.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court AFFIRMS the Commissioner's decision.

IT IS SO ORDERED.

DATED this 26th day of April, 2023.

_____
ANDREW HALLMAN
United States Magistrate Judge